```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
KENNETH CULPEPPER,

                    Plaintiff,
                                           MEMORANDUM AND ORDER
          -against-                        21-CV-6553(JS)(LGD)

ERROL D. TOULON, JR., Sheriff;
JOHN DOE #1, Warden;

                    Defendants.
-------------------------------------X
APPEARANCES
For Plaintiff:      Kenneth Culpepper, pro se
                    223 Gunther Avenue
                    Bay Shore, New York 11706

For Defendants:     No appearances.
```

SEYBERT, District Judge:

Before the Court is the renewed application to proceed in forma pauperis ("IFP") (see IFP App., ECF No. 14) filed by pro se plaintiff Kenneth Culpepper ("Plaintiff") in relation to his civil rights Complaint filed pursuant to 42 U.S.C. § 1983 ("Section 1983"). (See Compl., ECF No. 1.) For the reasons that follow, the Court GRANTS Plaintiff's IFP Application IFP and DISMISSES the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1), for failure to allege a plausible claim for relief.

BACKGROUND[1]

Plaintiff filed his sparse Complaint while incarcerated at the Willard Drug Treatment Campus and has since been discharged. (See Compl., ¶ I; Not. of Change of Address, ECF No. 12.) Plaintiff seeks to challenge the conditions of his confinement while detained at the Suffolk County Correctional Facility (the "Jail") from May 27, 2020 to August 3, 2021 and as related to the COVID-19 virus (hereafter, the "Virus").  (Id., ¶ II, and at 5-10.)

More specifically, Plaintiff complains: (1) corrections officers exposed inmates to the Virus because "there was no acceptable credible Covid-19 testing regimen established for the correctional officers before they come in contact with captive inmates"; (2) upon arriving at the Yaphank Correctional Facility, he was housed in quarantine for 14 days, during which period he was locked in a cell for 23 hours a day; and (3) following exposure to a positive-tested inmate, Plaintiff, along with "the entire inmate population of the dorm," was moved back into quarantine for "16 days because defendant Toulon's policy is they don't test inmates on the weekend."  (Id. at 7-8.)

---

[1]  Excerpts from the Complaint are reproduced here exactly as they appear in the original.  Errors in spelling, punctuation, and grammar have not been corrected or noted.

According to the Complaint, being subjected to the quarantine protocol "is effectively being punished without having be cited for misbehavior and without the benefit of a disciplinary hearing . . . thereby violating Plaintiff's due process rights." (Id. at 9.) Plaintiff also alleges: Defendants did not follow the "CDC policy of mask wearing and washing hands"; "being denied hand soap"; and the inability to socially distance. (Id.) As a result, Plaintiff claims to have suffered emotional distress and mental anguish for which he seeks to recover a damages award in the sum of $1 million. (Id. at 10, and at ¶ III.)

## DISCUSSION

I. Plaintiff's *In Forma Pauperis* Application is Granted

The Court finds that Plaintiff is qualified by his financial status to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's renewed IFP Application (ECF No. 14) is GRANTED.

II. Consideration of the Complaint Under 28 U.S.C. § 1915

   A. Legal Standards

      1. 28 U.S.C. § 1915

Section 1915 requires a district court to dismiss an IFP complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii); 1915A(b). An action is frivolous as a

3

matter of law when, among other things, it is based on an "indisputably meritless legal theory" or when it "lacks an arguable basis in law . . . or [when] a dispositive defense clearly exists on the face of the complaint." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) (citation omitted). The Court is required to dismiss the action as soon as it makes such a determination. See 28 U.S.C. § 1915A; Avant v. Miranda, No. 21-CV-0974, 2021 WL 1979077, at *2 (E.D.N.Y. May 18, 2021).

Courts are obligated to construe the pleadings of a pro se plaintiff liberally and to interpret them to raise the "strongest [claims] that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). "But the 'special solicitude' in pro se cases[] has its limits –- to state a claim, pro se pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief." Wynn v. Regus Mgmt. Grp. LLC, No. 21-CV-3503, 2021 WL 2018967, at *1 (S.D.N.Y. May 17, 2021) (quoting Triestman, 470 F.3d at 475).

2. Section 1983

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be

4

> subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must "allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Rodriguez v. Shoprite Supermarket, No. 19-CV-6565, 2020 WL 1875291, at *2 (E.D.N.Y. Apr. 15, 2020) (internal quotation marks and citation omitted). The Court liberally construes the pro se Complaint as alleging claims challenging the conditions of his confinement and a deprivation of due process.

    B. Application

        1. Deliberate Indifference Claims

Plaintiff does not allege whether he was a pre-trial detainee or post-conviction inmate at the time of the challenged confinement. This distinction is relevant because Plaintiff's deliberate indifference claims arise under the Fourteenth Amendment if he was a pre-trial detainee, but under the Eighth Amendment if he was post-conviction inmate. See Gazzola v. County of Nassau, No. 16-CV-0909, 2022 WL 2274710, at *8 (E.D.N.Y. June 23, 2022) ("'A post-conviction-prisoner's deliberate indifference claim is analyzed under the Eighth Amendment while the same claim

5

raised by a pre-trial detainee is analyzed under the Due Process Clause of the Fourteenth Amendment.'" (quoting Horace v. Gibbs, 802 F. App'x 11, 13-14 (2d Cir. 2020) (citing Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017))). The Eighth and Fourteenth Amendments "embrace different definitions of the 'subjective' or 'mens rea prong.'" Horace, 802 F. App'x at 14 (citing Darnell, 849 F.3d at 35).

> In order to establish an Eighth Amendment claim of deliberate indifference to safety, a prisoner must show that: (1) he was subject[ed] to conditions of confinement that posed an objectively serious risk of harm, as distinct from what a reasonable person would understand to be a minor risk of harm; and (2) a defendant prison official acted not merely carelessly or negligently but with a subjectively reckless state of mind akin to criminal recklessness (i.e., reflecting actual awareness of a substantial risk that serious harm to the prisoner would result).

Pagan v. Rodriguez, No. 20-CV-0251, 2020 WL 3975487, at *4 (D. Conn. July 12, 2020) (citations omitted); Darnell, 849 F.3d at 29 (instructing an Eighth Amendment deliberate indifference claim requires a plaintiff satisfy two elements: (1) an "objective" element, requiring showing the challenged conditions are sufficiently serious; and (2) a "mental" element, requiring showing officer(s) acted with at least deliberate indifference to the challenged conditions).

To allege a claim for deliberate indifference to health and safety under the Fourteenth Amendment's Due Process Clause, a

6

plaintiff must allege facts to satisfy two prongs: (1) an "objective prong" showing plaintiff's condition of confinement posed an unreasonable risk of serious harm to plaintiff; and (2) a "mens rea prong" showing that the state actor's conduct amounts to deliberate indifference to that objectively serious risk of harm. See Darnell, 849 F. 3d at 29; see also Charles v. Orange County, 925 F.3d 73, 86 (2d Cir. 2019).

"[T]here is no question that an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus." Chunn v. Edge, 465 F. Supp. 3d 168, 200 (E.D.N.Y. 2020). Indeed,

> [c]ourts have long recognized that conditions posing an elevated chance of exposure to an infectious disease can pose a substantial risk of serious harm. Thus, the Supreme Court has rejected the proposition that prison officials may "be deliberately indifferent to the exposure of inmates to a serious, communicable disease." Thus, determining whether prison conditions pose a substantial risk of serious harm from COVID-19, or any other risk, must be determined "after accounting for the protective measures [the prison system] has taken."

Id. (alteration in original) (first quoting Helling v. McKinney, 509 U.S. 26, 35-36 (1993); then quoting Valentine v. Collier, 956 F.3d 797, 801 (5th Cir. 2020)).

Here, Plaintiff's allegations make clear that Defendants implemented safety measures at the Jail in response to the COVID-19

7

Virus. And, those measures apparently protected Plaintiff from contracting the Virus given that he was allegedly exposed to it in the Jail on several occasions and, following a period of quarantine, tested negative each time. Thus, the challenged conditions of confinement did not pose an objectively serious risk of harm to Plaintiff. And, even assuming that they did, Plaintiff fails to allege that any Jail official acted with the requisite state of mind. See, e.g., Porter v. Fam. Serv. League, No. 21-CV-5120(JS)(ARL), 2021 WL 5324888, at *3 (E.D.N.Y. Nov. 16, 2021).

Further, Plaintiff's allegations that the quarantine conditions (23-hour daily lock downs for 14-day and 16-day periods (see Compl. at 6-7)0 violate the Eighth or Fourteenth Amendments are not plausible. It is well-established that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 89 (1987). Indeed, "the Court must defer to the broad discretion of prison authorities in their attempt to control the spread of COVID-19 within their facility. That is, even 'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" Jones v. County of Allegheny, No. CV 21-1094, 2022 WL 2806779, at *7 (W.D. Pa. June 24, 2022) (quoting Turner, 482 U.S.

8

at 89), report and recommendation adopted, 2022 WL 2803111 (W.D. Pa. July 18, 2022). Indeed, "[b]ecause it is difficult to social distance in a correctional setting, the Court cannot second guess where authorities move those who test positive, those who refuse to be vaccinated, those who are more vulnerable to serious complications should they contract COVID-19, and those who recover from COVID-19. That is, the list of relevant considerations for authorities is long and the Court will not disturb that administrative decision-making." Jones, 2022 WL 2806779 at 7; see also Burrell v. Annucci, No. 22-CV-0701, 2022 WL 4618737, at *10 (N.D.N.Y. Sept. 30, 2022) (sua sponte dismissing pro se Section 1983 complaint finding allegations did not establish an Eighth Amendment claim in the absence of allegations that defendants failed to implement state, federal, and DOCCS guidelines "knowingly and disregarding an excessive risk" to plaintiff's health or safety); Rivera v. Viger, No. 21-CV-0470, 2021 WL 3269095, *2 (D. Conn. July 30, 2021) (sua sponte dismissing pro se Section 1983 complaint finding allegations did not establish a Fourteenth Amendment claim given the failure to allege any direct personal involvement of any defendant in the asserted indifference to plaintiff's health and welfare resulting from his exposure to the COVID-19 Virus).

Similarly, courts have routinely upheld the involuntary placement of inmates in administrative segregation for protective

custody for periods of time far in excess of the 14 or 16 days of which Plaintiff complains. See, e.g., Milner v. Lamont, No. 20-CV-1245, 2022 WL 2110971, at *10 (D. Conn. June 9, 2022) (upholding 75-day involuntary quarantine where plaintiff "ha[d] not plausibly alleged that the denial of his recreation and shower privileges was unwarranted") (citing Pape v. Cook, No. 20-CV-1324, 2021 WL 2186427, at *10 (D. Conn. 2021) ("[G]iven the existence of the restriction on out of cell exercise during Mr. Pape's [15-day] period of confinement because of his exposure to his cellmate, who had exhibited symptoms of having contracted COVID-19, Mr. Pape has not plausibly alleged a constitutional violation."); Herbert v. Smith, No. 20-CV-6348, 2021 WL 3292263, at *6 (S.D.N.Y. 2021) (dismissing Fourteenth Amendment conditions-of-confinement claim, explaining, "although Plaintiff does not specify why he was denied recreation periods, the timing of the alleged denials . . . indicates that Plaintiff was denied recreation periods not because of Defendants' deliberate indifference; but rather, as a result of health and safety restrictions implemented at [his facility] to prevent the COVID-19 virus's spread among the inmate population — a sufficiently 'unusual circumstance' to justify such a denial").

Thus, as is readily apparent, Plaintiff has not plausibly alleged a deprivation of his constitutional rights under either the Eighth Amendment or the Fourteenth Amendment. Accordingly, such claims are DISMISSED pursuant to 28 U.S.C. §§

1915(e)(2)(b)(i)-(ii), 1915A(b)(1).

### 2. Due Process Claim

Plaintiff's allegation that he was denied due process by placing him in quarantine without a hearing requires little discussion. "No court has held that a hearing is required before an inmate is placed in medical quarantine." Milner, 2022 WL 2110971, at *11 (citing Pape, 2021 WL 2186427, at *12 (dismissing sentenced inmate's procedural due process challenge to confinement in quarantine for 15 days without a hearing)). Thus, Plaintiff has not plausibly alleged a due process claim; hence this claim is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

### 3. Personal Involvement

Even if Plaintiff had alleged a constitutional deprivation, which he has not, such claim would fail because Plaintiff has not adequately alleged the personal involvement of either Defendant. To state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. See Farid v. Elle, 593 F.3d 233, 249 (2d Cir. 2010). In Ashcroft v. Iqbal, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to . . . [Section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has

11

violated the Constitution." 556 U.S. 662, 676 (2009). A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law and should be dismissed. See Johnson v. Barney, 360 F. App'x 199, 201 (2d Cir. 2010).

In the instant case, although he names Sheriff Toulon and the Jail's Warden as Defendants, Plaintiff includes no factual allegations of conduct or inaction attributable to either Defendant. (See Compl., in toto.) Rather, it appears Plaintiff seeks to impose Section 1983 liability upon the Defendants given their supervisory positions. However, the Second Circuit has made clear that there is "no special test for supervisory liability." Tangreti v. Bachmann, 983 F.3d 609, 616 (2d Cir. 2020). Instead, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." Id. at 620. "[B]ald assertions and conclusions of law" are insufficient to establish personal involvement. See Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). Thus, Plaintiff's conclusory and speculative allegations that Sheriff Toulon "negligently exposed claimant to the Covid-19 virus" and "does not have an acceptable credible testing regimen established for the correction officers before they come into contact with captive inmates" are unavailing to state Section 1983

12

claims against Sheriff Toulon. Moreover, although Plaintiff names the Warden in the caption, in the body of the Complaint, there are no allegations of conduct or inaction attributable to the Warden. Hence, Plaintiff fails to raise any viable Section 1983 claims against the Warden. Thus, Plaintiff's Section 1983 claims against the Defendants are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).[2]

III. Leave to Amend the Complaint

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of N.Y., 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted); see also Patel v. NYU Langone Hosps., No. 20-112, 2021 WL 4852426, at *4 (2d Cir. Oct. 19, 2021) (absent a finding of futility, a district court should afford a pro se litigant "at least one opportunity to amend his complaint to cure its shortcomings"). Given the Second Circuit's guidance that a pro se complaint should not be dismissed without leave to amend unless amendment would be futile, Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), the Court has carefully considered whether leave to amend is warranted here. Because the

---

[2] Moreover, even if Plaintiff had adequately pled supervisory liability, he has not alleged a plausible constitutional deprivation against any Defendant for the reasons set forth herein.

13

defects in Plaintiff's claims are substantive and would not be cured if afforded an opportunity to amend, leave to amend the Complaint is **DENIED**. Further, given the dismissal of Plaintiff's federal claims without leave to amend, the Court declines to exercise supplemental jurisdiction over any remaining state laws claims Plaintiff may have; any such claims are thus **DISMISSED WITHOUT PREJUDICE**. See 28 U.S.C. § 1367(c)(3); see also Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (a federal court should generally decline to exercise supplemental jurisdiction over state law claims if, as is the case here, the complaint asserts federal question jurisdiction but not diversity jurisdiction, and the complaint's federal claims are dismissed at an early stage in the litigation).

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's IFP application (ECF No. 14) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Complaint is **DISMISSED PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1)**;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **ENTER JUDGMENT AND MARK THIS CASE CLOSED**;

**IT IS FURTHER ORDERED** that the Court certifies that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith, therefore, IFP status is DENIED for purposes of any appeal. See Coppedge v. United States, 369

U.S. 438, 444-45 (1962); and

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to mail a copy of this Order to Plaintiff at his address of record.

                    **SO ORDERED.**

                    /s/ JOANNA SEYBERT
                    JOANNA SEYBERT, U.S.D.J.

Dated:    October 4, 2023
            Central Islip, New York